Good morning, Your Honors. May it please the Court, I am Camille Bowman on behalf of the petitioners, Mr. Minar, his wife, and their four children. I would like to reserve the last two minutes of my time for rebuttal. This is an asylum case where the main issue is whether substantial evidence compels a finding that petitioners have shown past persecution or have a well-founded fear of future persecution to warrant a grant of asylum. We would put the totality of the circumstances in deciding whether or not a finding of persecution is compelled. In this case, both the IJ and the BIA relied on the case Chancon v. INS and found that Mr. Minar did not have past persecution or a well-founded fear of future persecution. The rule set forth in Chancon is, prosecution for participation in a coup does not constitute persecution on account of political opinion when peaceful means of protest are available for which the alien would not face punishment. We believe our case can be distinguished from the Chancon case and that Mr. Minar is not similarly situated as Mr. Chancon. Yes, they were part of the RAM group, which is the Reform Armed Forces of the Philippines Movement, and they were also part of the 1987 attempt coup d'etat for the President then Aquino. But the difference here is that Minar was more involved in that case, and after that he also suffered persecution. For instance, when he was detained, he was put in jail for a couple of days without food, sleep, water, and heavy interrogation. There were no formal charges filed, and he wasn't allowed to see a lawyer for six months. Finally, he was able to escape one of the detention centers and fled to the United States. His wife accompanied him, but she was able to go back to the Philippines so she could see about her children. And while she was there, she was approached by military personnel who brought her to see military officers. And one in particular told her that she needed to convince her husband to return to the Philippines, and if she didn't, he could not guarantee her safety. So that's another point in that one of Mr. Minar's wife actually was threatened. Additionally, after Mr. Minar... Now, is she, is her application and the children's application for asylum dependent upon Mr. Minar's? Yes. All right. So, Chanco seems to apply, except that you have this later charges of, against him that, for actions apparently while, committed while he was in the United States. Is there any evidence that those charges were trumped up or falsely created out of a political motivation? Well, there's no direct evidence. It's hard to show that. All we can show is that Mr. Minar did come to the United States. And in that time frame, the officials were coming to see his wife. They came to see his parents. And it's his belief that the charges were trumped up because he can't imagine how it could be any kind of mistaken identity when his picture was in the wanted ad. And he just feels that it's some government's official who has done these trumped up charges so that, so that... Right. But it can't be just his feeling. It has, there has to be some objective indication that the trumped up charges were due to a political or, I think you're, you're claiming political asylum, right? Yes. Okay. Due to a political motivation by the current government. What, what evidence in the record is there of that? There's no, there's no direct evidence that it's any particular group who made up these trumped up charges. Let me ask you this, counsel. Is there any evidence that there is any legitimacy to either the highway robbery charge or the bombing charge if Mr. Minar was in the United States when those actions took place? Not to my knowledge, no, because he was already here. Now, was Mr. Minar given a favorable credibility finding by the IJ? Yes, Your Honor. And he testified that, he also brought some newspaper articles in describing himself in the newspaper articles as having a certain political coloration. Yes, Your Honor. And being accused of being a head of a political group that had done the bombings, right? Yes. Was there any doubt as to the credibility of those reports? I mean, he presented them. Was there any counter evidence on, was there, did the IJ say, I don't believe the newspapers? No, the IJ asked the trial attorney to look into those crimes towards the end of the removal proceedings, and nothing happened with that. They came back for the next removal proceedings and nothing came of it. So if there's no legitimate prosecutorial purpose for a government's harassment of a purpose of a person, isn't there a presumption that the motive for harassment is political under our cases? Yes, Your Honor. In what case is that? Singh v. Ilkert. I wasn't asking you, Judge Bay. I was asking you, counsel. Pardon me. I appreciate you helping me, because I read the immigration outline from the Ninth Circuit, so I know they're there, but I can't cite them off the top of my head. Counselor, let me start on this again. As I understand it, you have really two different situations here. One is participation in coup, and the IJ said Shano applied, or Chano, whichever you want to say, and therefore they can't go to that. And the second allegation is to false charges. What is our standard of review for the decision? I would think your standard of review is substantial evidence. I would, too. And didn't the IJ say there was insufficient proof presented by your client that these criminal charges, or whatever, were related to the political problem? Well, the one I --- Isn't that what the IJ found? The IJ looked at the coup situation and the criminal charges separately. She didn't consider them together. She didn't consider the whole of all of the things that we were saying as to the reasons why he was persecuted. Maybe each one didn't amount to persecution necessarily per se, but when you take it all together and look at it under the totality of the circumstances, we think that there was persecution. What evidence do we have linking them? Well, we have none. I mean, that's what she said. I mean, the bottom line is that if I have to find substantial evidence, and it's on your client to present it, and here we have all of these. First of all, we had participation in the coup, and really, Chano's pretty well straight out about what I need to do on that. And then we come up with false charges. It seems to me Munar, your client, introduced the evidence that the robbery and the bombing actually took place and that the police were investigating it. The fact that the police may have mistakenly identified Munar as a suspect doesn't compel us finding that the police investigation was legitimate. That's Deneu, 372 Fed 3rd, 1045. So how do I get, I mean, I frankly believe Judge Bae is right on point with his questions, but how do I get past the substantial evidence standard here? Because it seemed to me that somebody, you're the one, your client's the one who brought up the investigations. He's the one that said they may have been legitimate and that the police were investigating it. How do I get to the extra point that you want me to make? Otherwise, substantial evidence sustains the I.J.'s decision. Well, Your Honor, you have to look at all of the evidence as a whole, and you have to look at the political climate at the time, and the time periods that all these things, and when all these things happen, and Munar's association with the RAM group and his part of being an investigator or whatever his duty was for the Air Force, how he had these certain political ties, how he had certain knowledge of the political world, about officials in the government, that there could be any group who, who, who could want to hurt him. But any group doesn't say, then, he's going to be subject, he's going to be subject to the political harassment you've got to come up with. It could be the Marcos supporters, it could be the Aquino supporters, it could be the military officials, especially since they were embarrassed that he was able to escape from them. He's against corruption in the military and government, and there's so many people who would like to silence him. Let me, so, just to clarify things, we are reviewing the BIA's decision, not the IJ's decision. We are reviewing the BIA's decision. Okay. However. But the BIA does, does rely a lot and makes conclusion statements on the IJ, so if it's not clear, we can look to the IJ's decision. Right. But he, he relies on the reasons, a lot of the reasons that the immigration judge, but we really are, strictly speaking, reviewing the BIA's decision. I, you know, I've been trying to understand this case because I'm struggling with it. Um, I, I think the trumped up charges is your best argument, and I guess what you're saying is that you have to, there's only one inference that can be drawn from the combination of the coup attempts and the later false charges, and that is political persecution. That would create, he clearly has a subjective fear, so we're looking for something objective. Okay. Um, in the record, there are several, um, there are several articles on the state, uh, country reports that talk about security forces, um, uh, subjecting, um, detainees to abuse, extrajudicial executions, and they're at AR-676, A-370. There's a hidden patterns of torture article 718. I don't think you have to go there. I mean, if the man goes back to his Philippines islands and on trumped up charges, he's put in jail, that's just what he's facing. He's facing persecution. That's right. Okay. Counsel, um, you've gone a minute and a half over, um, and we'll give you some briefing. You've got all the time in any event. My name is Alan Hausman. I'm an attorney with the Office of Immigration Litigation from the Justice Department in Washington. And, uh, as the court has noted, this is, uh, an asylum case. And here, the, um, Board of Immigration Appeals has determined, uh, in accord with the IJ's prior findings that the petitioner, Mr. Munar, uh, has failed to satisfy both sides of the requirements for both asylum and withholding of removal in that he hasn't demonstrated, um, uh, harm which rose to the level of persecution, past or um, and that he failed to demonstrate that the harm that may have been suffered was on account of one of the protected grants. If he's facing jail on highway robbery charges and bank bombing charges, that is future persecution, is it not? If they're trumped up? Well, if, if they're trumped up for political reasons. If they're trumped up, we'll take political reasons in a second. That's. Now, is there any doubt in your mind that these are trumped up charges? Yes, Your Honor. There is doubt in my mind. Why is that, sir? And the case law supports that. Now, wait a minute. You have an no adverse credibility finding, right? That's correct. You have. So you must, the IJ must take as true what the man says. I disagree, Your Honor. That the man was arrived here in 1988. He's worked for 13 years at Boeing as a maintenance engineer. He hasn't been back to the Philippine islands. And he's charged in 1991 with highway robbery and placing bombs as part of an ultra rightist group in the Philippines whilst he was in the United States. True? That's the evidence. I disagree, Your Honor. It's not the evidence. What is the evidence? Section 242 of the Immigration Nationality Act provides that this is a review before this court on the record. Your Honor has recited facts that are not relevant to either not part of the record or not relevant to the decision that was below with respect to the conduct of this particular individual, of Mr. Munar. I'm reciting facts which are in the record. He says he wasn't there. We have to tell, we have the newspaper articles which are in the record. They're undisputed. And they describe him as being an ultra rightist leading a group of bombers in Manila whilst he was working for Boeing in the United States. Is that not pretty good evidence of trumped-up charges? I disagree, Your Honor. I don't think that that's evidence of trumped-up charges on one of the protected grounds. And I'm not going to recite. The charge may be trumped-up and may be trumped-up on some other protective ground, right? Now, trumped-up it is. The question is, has he proved the connection between political persecution? Assume they're trumped-up for purposes of the conversation. Assuming that they're trumped-up. Now, as to whether they are politically motivated trumped-up charges, that you have a much better case on it, right? But not necessarily a winner. How do you get around the, if they are trumped-up, if there's no evidence of a legitimate prosecutorial purpose for a government's harassment of a person, there arises a presumption that the motive for harassment is political. That was language used by Judge Reinhart in Navas v. INS, 217, Fed 3rd, 646. Now, where is the evidence, if there's a presumption arising from trumped-up charges that it was political, where is the evidence to rebut the presumption? Your Honor, I respectfully refer the Court to the decision in DINU. I'm sorry, which case? DINU. D-I-N-U. But DINU was a member of the state Romanian security forces, and he was in Romania when the crimes were committed. This man was a Boeing engineer in the United States when the crimes were committed in the Philippines. DINU facts are not opposite. Well, Your Honor, the DINU case is relevant because Mr. Munar has an opportunity to return to the Philippines and present his alibi evidence that would establish that they have a case of mistaken identity. What we don't know in the record is what basis the police in the Philippines relied upon for the belief that Mr. Munar was involved in those particular crimes. Does it make any difference if they're trumped-up charges? Well, if we assume that they're trumped-up charges and we assume that they're politically motivated. No, no, no. Trumped-up charges, we assume that. Now, the next point is if they are trumped-up charges, isn't there a presumption they are politically motivated in the circumstances of this case? Your Honor, my perspective is that, on the trumped-up charges, is that we don't know whether they're trumped-up. We can't establish unless we know why the police have identified Mr. Munar. But he wasn't in the country when the acts that he's charged with were committed. Wait, counsel. He was not in the country when the acts he's charged with were committed. So how could they be anything else but false charges? Because there is no evidence in the record, Your Honor, as to where to indicate to the police in the Philippines where Mr. Munar was at the time. If the police in the Philippines- He was in the United States. He arrived here and filed his asylum application in 1988. And then there was some bizarre, I'm not sure, maybe you can explain, 10-year gap before he ever even got his hearing on his asylum application. But he was here in 1988. No. The Dinu case points to the investigative process and the issues that the police go through. And what the record doesn't establish is that the police who made Mr. Munar a suspect were aware of his location. There's a possibility in- Perhaps he may have been in the Philippines or, as we're familiar with- No, no, no, not perhaps. The people who are in prison directing- We don't deal with perhaps. We deal with the record. The record is clear he was here when the crimes were committed. The record is clear that Dinu was in Romania as a member of the Securitate when the crimes were committed. Those cases are quite different. Now, do you agree that the charges could not have been anything but phony inasmuch as the man was in California when the bank robbery, the highway robbery, and the bombing took place? I do not agree, Your Honor. What evidence do you have that he was in the Philippines? I do not have any evidence. Of course you don't.  He said he was here during the whole time. And you believed him. The I.J. believed him, correct? And the government. This is an unusual case because if you read at ER 196, not only did the I.J. find that Munar was credible, but the service stipulated that he was credible. In other words, your colleague at the trial said, I think he's credible. Now, based on that, and when he says, I was in California, I wasn't in the Philippines, how can you say the charges aren't trumped up? Well, I rely upon Judge Kaczynski's decision in Dinu. Dinu. Judge Kaczynski was a Romanian. Dinu was a Romanian. Dinu was in Romania at the time the actions were committed. I understand that, Your Honor. But even though Mr. Munar was present in the United States, it does not mean that the police in the Philippines had information that he was involved in those particular crimes. Are his employment records a part of the record? I'm sorry, Your Honor, I couldn't hear you. Are Mr. Munar's employment records a part of the record? I don't know that, Your Honor. But there isn't a question, there isn't a doubt that Mr. Munar was present in the United States. Doubt by whom? I have no doubt that there's no official doubt. I mean, it's established in the record. It's credible he was present in the United States. But I read Dinu to say that the an overseas police department, police department in a country, is not engaged in a legitimate investigation just because there are mistakes in the information that they have, and that it could easily have been resolved by Mr. Munar if he provided to the police his alibi evidence. But he chose not to do that. He chose not to return to the Philippines to take advantage. He chose not to return. You don't know whether he provided the police the alibi evidence and whether they paid the attention to it. But he didn't choose to return, and it doesn't come as a surprise to me as to why he doesn't choose to return. Well, I was going to say that he chose not to return to the Philippines to take advantage of the amnesty that was offered to the conspirators in the coup. But there was no amnesty offered from highway robbery and bank bombing, was there? No, no, Your Honor. Your Honors, I would point to several pieces of evidence to assist the Court in arriving at its decision. The subpoena for Mr. Munar for the investigation of the coup plotters, which appears at page 996 of the administrative record. Evidence concerning the amnesty, which appears at pages 840 through 841. At page 678 of the record, there is a description of the judicial system and its availability and the guarantees that it affords to Filipino citizens. And I would also point to the administrative record at page 806, which is a State Department profile of asylum claims. It's dated September 1998, and it states that as to the political structure of the Philippines, the Philippines is a democratic republic with an elected president, a fully functioning political party system, a bicameral legislature, a free press, and an independent judiciary. Although it does indicate that there is political corruption is widespread, particularly in the electoral and judicial systems. For balance, to include that. Counsel, one question which I would have as it relates to this participation in the coup. It seems to me that our case law, even though Chano might apply, has one out for Mr. Munar in this situation, and that is if he is subjected to disproportionately severe punishment for his involvement. Now, the other coup plotters didn't get anything. They got amnesty. He got punishment. How do I get around that, if you will, precedent in our court that would suggest that, yes, Chano may be correct in general. However, if he's going to be subjected to disproportionately severe punishment for his involvement, that it still fits the test. I have pointed two things in the record, Your Honor, to reply. One is that the amnesty was granted substantial years after the coup took place, or the attempted, the unsuccessful coup took place. And so the lack of punishment for the other coup plotters is a result of a political compromise and the granting of the amnesty, which is described in the record at the pages that I referred to. And Mr. the Petitioner decided, made the decision not to return to the Philippines to take advantage of the amnesty. Also, with respect to the punishment, the punishment that's testified to, which occurred during the detention, was immediately after the coup. And it was, the other coup participants were also arrested. Hundreds of people were held on board the ship for months. And so he wasn't punished where others were not. He received basically, according to this record, the same treatment as the other participants in the coup. Well, suppose we disagree with you and we find that he had, he has a well-founded fear of future persecution, do we need to remand this to the I.J. for any further findings? The case would have to be, with respect to asylum, which is discretionary grant of protection by the Attorney General. But that's remand to the Attorney General for the exercise of the Attorney General's discretion. But I'm saying, are there any further findings, or is that the end of the inquiry if we find well-founded fear? Well, if the Court were to find that the factual record is incomplete or that the decision of the BIA is inconsistent with the factual record, then the Court would remand it for further fact-finding and proceedings by the immigration judge. But in any event, if the Court were to find that Mr. Menard has established his eligibility under the statute for asylum because he's a refugee who's been persecuted for one of the protective grounds, it would have to be remanded to the Board of Immigration Judge for the exercise of discretion. All right. I'm not sure that's exactly correct, but thank you. Thank you, Your Honors. All right. I'll give you one minute. Rebuttal? Just one point I'd like to say. My understanding with the way the amnesty worked is that Mr. Menard couldn't take advantage of it because he was already in the United States. He would have had to go back to the Philippines. He already had those trumped-up charges, I believe. And with the amnesty, you could not have any criminal charges against you. So that wouldn't have worked for him. I submit. All right. Thank you very much, counsel. This case, Menard v. Keisler, will be submitted.
judges: Wardlaw, Bea, Smith